## THE ROSS CODDINGTON.

(Circuit Court of Appeals, Second Circuit. Feb. 16, 1925.)

### No. 149.

1. **Master and servant** ⬉354—**Release under state Workmen's Compensation Act held no defense to suit against third party for injuries.**

A payment made by an employer to an injured employee under the Workmen's Compensation Act of the state, for which a release was given, was not of damages for negligence, and does not bar an action by the employee against a third party for negligence causing the injury.

2. **Torts** ⬉22 — **To constitute "joint tortfeasors" there must have been community of action.**

To constitute two parties "joint tortfeasors," there must have been community of action between them.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Joint Tort-Feasors.]

3. **Shipping** ⬉86(2) — **Evidence held not to show negligence of tug, causing injury to libelant.**

Evidence *held* not to show negligence of a tug which rendered it liable for an injury to libelant by falling between the tug and a lighter, when stepping from one to the other, when they were being made fast.

Appeal from the District Court of the United States for the Western District of New York.

Suit in admiralty by John Cunningham against the steam tug Ross Coddington; Benjamin L. Cowles, claimant. Decree for libelant, and claimant appeals. Reversed and remanded, with directions.

See, also, 1 F.(2d) 326.

This is a suit in rem for personal injuries received by Cunningham. At the time he was injured, Cunningham was 73 years old; he had been a sailor all his active life, but for some 10 years had served as a night watchman. In December, 1921, there was a steamer aground in the harbor of Buffalo, and the Great Lakes Company, the concern which employed Cunningham, was, with others, engaged in salvage operations upon said steamer. A lighter and other property belonging to Great Lakes Company lay alongside the stranded steamer, and Cunningham was to act as night watchman over and on said property.

The Ross Coddington is an ordinary harbor tug, 60 feet long and 15½ feet beam, which was employed by another concern, also engaged in the salvage operation aforesaid to transport stores, supplies, and work-men to and from Buffalo wharves to the stranded steamer and the salving craft around her. On the evening of December 30th, Cunningham boarded the tug at Buffalo in order to reach the property of the Great Lakes Company, which he was to watch during the night. The tug was to bring back the men who had worked during the day. The tug reached a lighter belonging to Great Lakes Company shortly before 5:30 p. m. She ran alongside slowly, and was in the act of getting out a line to the lighter when the Great Lakes foreman on board the lighter called out, "Is John Cunningham there?" Cunningham replied that he was, and thereupon another employee of Great Lakes Company came to or near the rail of the lighter, extended his hand to Cunningham and said, "Give me your hand, old timer."

The rail of the tug is about 18 inches above the tug deck and is the customary timber, substantially flat and about 7 inches wide. The deck of the lighter was about a foot higher than the rail of the tug. Cunningham accepted the invitation to take the hand of his fellow employee on the lighter, and thereupon (in Cunningham's words) "I gave him my hand, and the tug shoved off; I made a step with my right foot and struck the scow; the weight of myself pulled him, and I fell off the rail of the tug into the water. He had hold of my hand all the time. * * * He went head first on the tug. He dove on the tug when I slipped off the rail of the tug and went into the water."

In falling into the water, Cunningham apparently struck the fender strake of the tug and received severe injuries, and to recover damages for these injuries he brought this suit in rem. Shortly after this the Great Lakes Company paid its employee Cunningham a certain sum of money, in consideration of which he executed and delivered a general release, discharging his employer of all claims by him against it for injuries sustained while getting onto his employer's craft "from tug Coddington in the outer harbor of Buffalo, N. Y."

The court below gave Cunningham a decree for substantial damages, and the claimant of the tug took this appeal.

Harold J. Adams and Herbert W. Huntington, both of Buffalo, N. Y., for appellant.

Elmer R. Weil, of Buffalo, N. Y., for appellee.

Before ROGERS, HOUGH, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The defenses urged here and below are: (1) That the action is barred by the release of Cunningham to Great Lakes Company; (2) that the injury occurred without any negligence on the part of the tug, but solely by libelant's own act.

[1] The theory of first defense is that, assuming a tort to have been committed, Great Lakes Company and the tug were joint tortfeasors, and therefore the discharge of one discharged both. The evidence clearly shows that what was paid Cunningham and what he gave a release for was thought to be due under the Workmen's Compensation Law of the state of New York. It being elementary that an award under that statute does not rest upon negligence, we agree with the reasoning of Jacowicz v. Delaware, etc., Co., 87 N. J. Law, 273, 92 A. 946, Ann. Cas. 1916B, 1222, holding that the mere fact of a workman receiving compensation under the statute does not prevent the person injured from suing one whose tort directly produced injury.

We think this doctrine here applicable, because the evidence shows no negligence upon which action might have been predicated against the Great Lakes Company. Therefore there was no reason why that concern should pay Cunningham anything, except the Workmen's Compensation Law of the state, which was thought to be applicable. Whether that opinion was correct is no concern of ours.

[2] But the defense is unavailable on a broader ground, viz. the Great Lakes Company and the tug were not joint tort-feasors. That phrase always implies some sort of community in wrongdoing, and such community is wholly absent here, first, because Great Lakes Company did no wrong at all; and, secondly, because the sole reason alleged in the libel for this suit, or discoverable therefor in the evidence, is the failure of the tug to make fast to the lighter before Cunningham was permitted to try to leave the tug. There was no community of action about this. The lighter was not moving, had nothing to do, and did it. We overrule the first defense.

[3] The libel alleges negligence on the part of the tug in inviting Cunningham to leave the same without having proper fastenings to keep "the two boats in question moored together." As to this we note that there is no evidence whatever that any one invited Cunningham to leave the tug when he did, or as he did, except his fellow employee

on board the lighter, who jocularly offered to assist him.

It is true that, when Cunningham endeavored to step up from the tug's rail about a foot, so as to get on the lighter, the two vessels were not fastened together; but the fastening was in process of being made, according to uncontradicted evidence, and Cunningham chose to do what he did without waiting for a mooring. The weather was perfectly calm. Cunningham, though old, had spent all his life on shipping; he asked no aid; he waited for no fastening; he did what he had undoubtedly been accustomed to do for years, and "missed his step."

In all this we are wholly unable to perceive any negligence on the part of the tug. No action in rem of this nature will lie against a vessel unless and until some fault in the construction, management, or operation of the craft is shown by a reasonable preponderance of evidence. The construction of the tug was entirely familiar; the weather offered no difficulties; stepping from the broad rail of a tug to the flat deck of a lighter, a foot higher up, is about as simple a thing as any waterman can do.

We perceive no negligence on the part of the vessel, and are therefore compelled to reverse the decree and remand the case, with directions to dismiss the libel.